# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| PEYTON POWELL BROWN, as Administratrix ad litem of the Estate of Jason DeWitt Powell, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION 14-0207-WS-B<br>) |
| ENDO PHARMACEUTICALS, INC., *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

## ORDER

This matter comes before the Court on Plaintiff's Motion for Remand (doc. 8). The Motion has been briefed and is now ripe for disposition.

**I.  Background.**

Plaintiff, Peyton Powell Brown, brought this action against defendants, Endo Pharmaceuticals, Inc. and Alex Stebbins, in the Circuit Court of Clarke County, Alabama. The Complaint alleged that plaintiff's decedent, Jason Dewitt Powell, died on March 28, 2012 after crushing and snorting Opana, a tablet form of the prescription painkiller oxymorphone. According to well-pleaded allegations of the Complaint, defendant Endo manufactured these Opana tablets despite knowledge of risks to producing that medication in a form that could be crushed, broken and/or dissolved, thereby releasing high concentrations of oxymorphone and escalating the dangers to the end user. The Complaint alleges that defendant Alex Stebbins (who is alleged to have "previously held a nursing license") supplied Opana to Powell on March 27, 2012, and that Powell's ingestion of same caused his death hours later. (*See* doc. 1, Exh. A, at 9-10.) On the basis of these factual allegations, Brown's Complaint presented purely state-law claims of negligence and wantonness against Endo and Stebbins, and demanded punitive

damages against both defendants pursuant to Alabama's Wrongful Death Act, as codified at Ala. Code § 6-5-410.[1]

On May 7, 2014, defendant Endo Pharmaceuticals filed a Notice of Removal (doc. 1), removing this action to federal court. The Notice of Removal alleged that "[t]his Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1332 (diversity of citizenship)." (Doc. 1, ¶ 1.) As to the former, Endo contended that Brown's "claims implicate substantial questions of federal law" because (i) they "involve the design, manufacture and distribution of Opana Tablets, a highly regulated Schedule II controlled narcotic substance" and (ii) they "effectively seek[] to challenge the decision by federal regulatory authorities to authorize the manufacture and distribution of Opana non-crush resistant tablets." (*Id.*, ¶¶ 30-33.) As to the latter, Endo's position was that Brown and Endo were of diverse citizenship, and that Stebbins' non-diverse citizenship (both Brown and Stebbins are identified in the Complaint as Alabama citizens) may be disregarded because he was fraudulently joined. (*Id.*, ¶¶ 9-17.)

Plaintiff has now filed a Motion for Remand, challenging the existence of federal subject matter jurisdiction (under either a federal question or a diversity theory) and seeking remand of this case to Clarke County. For its part, Endo opposes the Motion, arguing that jurisdiction is proper and, alternatively, asking that plaintiff's claims against Stebbins be severed to create diversity of citizenship as to the remaining claims.

**II.  Analysis.**

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction. *See, e.g., Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("the burden of establishing removal jurisdiction rests with the defendant seeking removal"); *City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."). This burden applies equally in the context of a motion to remand. *See Connecticut State Dental Ass'n v. Anthem*

---

[1] "In a wrongful death action under Alabama law, the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions – not to compensate the plaintiff." *Patterson v. Walden*, 2014 WL 852410, *4 (S.D. Ala. Mar. 5, 2014) (citations and internal quotation marks omitted).

*Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) ("On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court. *See, e.g., Scimone*, 720 F.3d at 882 ("we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand") (citation and internal marks omitted).[2]

### A. Federal Question Jurisdiction.

As an initial matter, Endo asserts in its Notice of Removal that federal jurisdiction lies pursuant to the federal question provisions of 28 U.S.C. § 1331. (*See* doc. 1, ¶¶ 1, 28-33.) Federal courts possess "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." *Connecticut State Dental*, 591 F.3d at 1343. Typically, "a defendant may remove on the basis of federal question jurisdiction only where that question appears on the face of the plaintiff's complaint." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 765 n.20 (11th Cir. 2010). On its face, Brown's Complaint does not interpose a federal cause of action, nor do any of her claims purport to arise under the Constitution, laws or treaties of the United States; rather, the enumerated claims sound exclusively in state-law theories of negligence and wantonness.[3]

---

[2] *See also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand).

[3] To be sure, Paragraphs 10 and 11 of the Complaint include factual allegations regarding Endo's contacts with the Food and Drug Administration ("FDA"), and particularly Endo's purported admissions to the FDA in late 2012 that the non-crush resistant form of Opana tablets (the same form that Powell allegedly ingested) was inherently dangerous, that Endo had developed a new crush resistant form of those tablets in late 2011 or early 2012, and that the FDA should forbid generic drug manufacturers from making the non-crush resistant form. (Doc. 1, Exh. A, at 10 ¶¶ 10-11.) The point of these FDA references in the Complaint was not that FDA regulations provide the relevant standard of care or that Endo ever diverged from FDA (Continued)

That said, even in the absence of a federally created cause of action, "in limited circumstances, federal-question jurisdiction may also be available if a substantial, disputed question of federal law is a necessary element of a state cause of action." *Jaraith v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998); *see also Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) ("a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law"). In that regard, the Supreme Court has explained that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, --- U.S. ----, 133 S.Ct. 1059, 1065, 185 L.Ed.2d 72 (2013). Thus, state-law claims asserted in a complaint may support § 1331 jurisdiction if those claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008).

The Eleventh Circuit has emphasized, however, that this is a "slim category of cases." *Adventure Outdoors*, 552 F.3d at 1296. The "mere need to apply federal law in a state-law claim," by itself, does not trigger § 1331 jurisdiction. *Id.* at 1300 (citation omitted). Rather, applicable caselaw "place[s] a strong, if not dispositive, emphasis on the character of the disputed federal issue in evaluating the propriety of substantial federal question jurisdiction," reasoning that "resolution of pure issues of federal law provides the strongest basis for resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 1299 (citation and internal quotation marks omitted).[4] Stated differently, to satisfy the

---

authorizations or requirements; rather, the obvious utility of those factual allegations to Brown was that they tend to show Endo's awareness of the dangerous nature of non-crushable Opana and its development of a safer alternative form of the drug months before Powell died by crushing and ingesting Opana in a form that Endo knew to be unsafe. In short, these scant mentions of the FDA in the Complaint are not indicative of the joinder of a federal issue in this action.

    4     These principles may be summarized as follows: "[T]he ideal vehicle for finding … jurisdiction pursuant to the substantial federal question doctrine is a case in which the state-
(Continued)

"substantiality" requirement for a federal issue in a state-law claim giving rise to federal jurisdiction, "it is not enough that the federal issue be significant to the particular parties in the immediate suit;" instead, what matters is "the importance of the issue to the federal system as a whole." *Gunn*, 133 S.Ct. at 1066.

Endo maintains that a substantial federal issue is presented here because Brown's state-law negligence and wantonness claims "depend entirely upon construction and application of the federal Controlled Substances Act ('CSA') and its enabling regulations." (Doc. 12, at 10.) Endo elaborates that "[t]he CSA squarely controls Endo's duties and constraints with respect to marketing Opana," and insists that "the CSA creates the sole legal duty governing Plaintiff's claims against Endo." (*Id.* at 11.) Defendant's analysis is long on rhetoric, but short on supporting law, facts and reasoning. Why is the CSA necessarily the only source of any legal duty of care that Endo might have owed Powell? The Complaint does not identify that statute as the legal foundation of plaintiff's negligence/wantonness claims against Endo. Nor does Endo cite any authorities to corroborate the notion that the CSA is and must be the sole source of any duty of care owed by a pharmaceutical manufacturer to an end user.[5] With its conclusory

---

law claims will be resolved by deciding a disputed federal issue that is discrete and purely legal …. [T]o the extent the federal issue in a case is fact-bound – requiring a court [to] apply federal law to the specific facts of a case to decide the state-law claims – it is less likely the case will fit into the small category of cases that may be brought into this Court because they raise a substantial federal question." *Cooper v. International Paper Co.*, 912 F. Supp.2d 1307, 1313 (S.D. Ala. 2012).

[5] Indeed, the relationship between the CSA and state-law negligence claims like Brown's is far from obvious. *See, e.g., Little v. Purdue Pharma, L.P.*, 227 F. Supp.2d 838 (S.D. Ohio 2002) (in negligence action brought by drug users against OxyContin manufacturer, finding that plaintiffs had stated colorable claims and that "[a]ny federal questions which may exist are either defensive in nature or subsidiary to the state law questions, and the damages Plaintiffs seek do not implicate a 'central concern' of the … CSA"); *McCallister v. Purdue Pharma L.P.*, 164 F. Supp.2d 783, 794 (S.D. W.Va. 2001) ("interpretive issues under the … Controlled Substances Act are insufficient to provide removal jurisdiction, in the absence of a congressionally-mandated private cause of action"); *Kim v. Interdent, Inc.*, 2010 WL 3155011, *9-11 (N.D. Cal. Aug. 3, 2010) (denying summary judgment on plaintiff's negligence claims based on common-law duty of care against company that supplied drug on which decedent overdosed, while granting summary judgment as to CSA-related negligence claims). Although defendant cites *Labzda v. Purdue Pharma, L.P.*, 292 F. Supp.2d 1346 (S.D. Fla. 2003), in support of its position, that case actually works against Endo's jurisdictional argument. The *Labzda* court found that (i)
(Continued)

jurisdictional allegations, defendant simply has not met its burden of showing that § 1331 jurisdiction may properly be exercised here on a "substantial federal question" theory.[6]

Even if the issue of duty were controlled by the CSA (and Endo has made no showing that might support such a conclusion), § 1331 jurisdiction would remain inappropriate under the substantiality prong of the *Grable* test. Again, not just any nexus to federal law (or even the presence of a federal element in a state-law claim) triggers "substantial federal question" jurisdiction. The character of that federal question is of critical importance. Would the CSA issues ostensibly implicated by Brown's complaint involve pure questions of unsettled federal law (which might support federal jurisdiction), or would they involve fact-bound application of well-settled legal principles to this case (which would not)?[7] By foregoing any response to this query, Endo has not satisfied its burden of showing that this action lies within the "slim category of cases" in which federal question jurisdiction may be gleaned from purely state-law tort claims based on the existence of a substantial federal question. Accordingly, Endo cannot defeat Brown's Motion to Remand via reliance on the federal question provisions of 28 U.S.C. § 1331.

### B. Fraudulent Joinder.

As an additional basis for invoking federal jurisdiction, Endo contends that the diversity provisions of 28 U.S.C. § 1332 apply. Under that section, federal courts have original

---

the CSA did not create a private remedy, and (ii) the Act did not impose a legal duty on the defendants in the context of that case, without expressing any views that the CSA must be the source of any such duty. *See id.* at 1353-56

[6] In that respect, this action is analogous to *Ash v. Providence Hosp.*, 2009 WL 424586 (S.D. Ala. Feb. 17, 2009). In *Ash*, this Court rejected the "substantial federal question" basis of federal jurisdiction where "[t]he allegations of the Complaint do not reasonably support a conclusion that federal law is the sole source of any legal duty of care that Ash imputes to Baxter for the negligence/wantonness claims; moreover, the questions … in the Complaint all appear to exist independently of federal law. Nothing in the Complaint would support a finding that Ash must prove a violation of the FDCA in order to prevail against Baxter." *Id.* at *4.

[7] *See Adventure Outdoors*, 552 F.3d at 1301 ("The dispute between the parties concerns the factual basis for the defendants' statements accusing the plaintiffs of violating federal law. Clear federal guidance exists on every question of federal law relevant to evaluating the falsity of those statements. … While this case does raise an important federal issue, the federal issue in this case does not implicate in a significant way the concerns that supported the exercise of federal jurisdiction over the state-law claim in *Grable*.").

jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted). The Eleventh Circuit has instructed that "[i]n light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated … to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted); *see also Osting-Schwinn*, 613 F.3d at 1086 (similar).

As a general proposition, "[d]iversity jurisdiction requires complete diversity between named plaintiffs and defendants." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). The Complaint reflects that both the plaintiff and defendant Alex Stebbins are citizens of Alabama. (Doc. 1, Exh. A at 8.) On its face, then, the pleading lacks the complete diversity required for § 1332 jurisdiction. Nonetheless, Endo argues that complete diversity is present here pursuant to principles of fraudulent joinder. That doctrine "provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1288 (11th Cir. 1998). To establish fraudulent joinder, the removing defendant must show "by clear and convincing evidence" that "there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "This burden is a heavy one." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (citation and internal quotation marks omitted). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Stillwell*, 663 F.3d at 1333 (citations and internal quotation marks omitted). "In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998); *see also Stillwell*, 663 F.3d at 1333 (similar).

To satisfy this heavy burden, Endo contends that the Complaint does not state a claim against Stebbins because it fails to comport with the heightened pleading requirements of Alabama Code § 6-5-551, which governs wrongful death actions "against a health care provider

for breach of the standard of care." *Id.*[8] But nothing in the Complaint would require a conclusion that Stebbins qualifies as a "health care provider" for purposes of that elevated pleading requirement. The Alabama statute defines "health care provider" as including "any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services." Ala. Code § 6-5-481(8). Nowhere in the Complaint does Brown allege that Stebbins was employed by physicians, dentists or hospitals during the relevant time period. At most, the Complaint alleges that Stebbins "previously held a nursing license" at some unspecified time. (Doc. 1, Exh. A at 9, ¶ 5.) So Endo would apparently have this Court assume, based on nothing more than a guess, that Stebbins was a nurse, acting in his capacity as a nurse employed by a physician or hospital, when he provided Opana tablets to Powell. Such rank speculation falls well short of the stringent burden placed on Endo, as the removing defendant, to establish fraudulent joinder. Simply put, the Court cannot find on this record that there is no possibility that the Complaint states a claim against Stebbins because of noncompliance with § 6-5-551; to the contrary, there is at least a possibility that § 6-5-551's heightened pleading standards do not even apply to Brown's claims against Stebbins. On that basis, the Court cannot credit Endo's theory that Stebbins was fraudulently joined because the Complaint's allegations against Stebbins do not pass muster under § 6-551.

Even if § 6-5-551 applied to Brown's claims against Stebbins (and, again, Endo has not met its burden of establishing that such is the case), it is hardly a slam dunk that the Complaint falls short of this pleading standard. For fraudulent joinder to be rejected as a basis for diversity jurisdiction in a particular case, "all that is necessary is for the Court to find … that [Endo] has failed to make a clear and convincing showing that no Alabama court could deem [Brown's] complaint against the non-diverse defendants sufficient under Ala. Code § 6-5-551." *Ash v. Providence Hosp.*, 2009 WL 424586, *7 (S.D. Ala. Feb. 17, 2009). In this case, the Complaint specifically alleges (i) that Stebbins provided prescription medication to Powell; (ii) the type of

---

[8] That section provides, in part, as follows: "In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, …[t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts." Ala. Code § 6-5-551.

medication that Stebbins provided to Powell; (iii) the date on which Stebbins provided that medication to Powell; (iv) that Stebbins' knowledge of prescription pain tablets was superior to Powell's; (v) that Stebbins knew or had reason to know that Powell faced injury or death if he received non-crush resistant Opana, and that Powell did not appreciate the dangers involved; (vi) that Stebbins provided the medication to Powell anyway; and (vii) that Powell crushed and inhaled that medication, which caused his death on March 28, 2012. The Court cannot categorically foreclose the possibility that an Alabama court would deem such allegations sufficient to amount to "fair notice" for purposes of § 6-5-551.[9]

Next, Endo endeavors to bolster its fraudulent joinder argument by lambasting the Complaint as "deliberately vague" and constituting a "manipulative device[]" by plaintiff to defeat removal. (Doc. 12, at 4 n.1.) The problem with that line of argument is, of course, the time-honored principle that "plaintiffs are the master of the complaint and are free to avoid federal jurisdiction." *Scimone*, 720 F.3d at 882 (citation and internal quotation marks omitted).

---

[9] *See, e.g., Mikkelsen v. Salama*, 619 So.2d 1382, 1384 (Ala. 1993) (to satisfy § 6-5-551, it suffices for the plaintiff to "give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm"); *Bell v. Shelby County, Ala.*, 2013 WL 2248247, *5 (N.D. Ala. May 21, 2013) (applying *Mikkelsen* and finding § 6-5-551 satisfied even though the complaint "does not pinpoint an exact time" during which the allegedly tortious conduct occurred); *James v. Baldwin Bone and Joint, P.C.*, 2009 WL 3747131, *5 (S.D. Ala. Nov. 4, 2009) (finding § 6-5-551 pleading standard met where complaint "alleged that the treatment took place in close proximity to the June 8, 2007 surgery and … identified the act which Dr. Stuber allegedly failed to perform, and the damage which he allegedly suffered as a result"). To be sure, Endo criticizes the Complaint for not being more specific as to "how" Stebbens provided Opana to Powell and for omitting the place where the drugs were delivered. (Doc. 1, at 5 n.1.) But the Alabama Supreme Court has not construed § 6-5-551 as a kind of inflexible, rigid pleading checklist. Instead, Alabama's high court has emphasized that the point of the statute is to give a health care defendant "fair notice of the claim asserted against him and against which he had to defend." *Mikkelsen*, 619 So.2d at 1385. Where such "fair notice" is provided, *Mikkelsen* teaches, "the courts should strive to find that" the statute is satisfied. *Id.* at 1384. There is at least a possibility that an Alabama court reviewing Brown's Complaint could find that it provides the requisite "fair notice" to Stebbins so as to satisfy any heightened pleading standard that may apply. Besides, plaintiff correctly points out that the statute requires that the date, time and place of the challenged acts be pleaded "when feasible and ascertainable." Ala. Code § 6-5-551. Plaintiff makes a colorable argument that the precise place where Stebbins supplied Opana to Powell is not yet ascertainable because "Plaintiff has not taken the deposition of Mr. Stebbins and Jason Powell is deceased." (Doc. 8, at 10.) This fact reinforces the Court's conclusion that there is at least a possibility that an Alabama court would deem Brown's Complaint adequate under the applicable pleading standard.

"For better or worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004) (citation omitted). If, as Endo suggests, the Complaint omitted crucial facts that are needed to ascertain whether Brown's claims against Stebbins are cognizable under Alabama law, its remedy is not to cry foul and remove the case based on conjecture and innuendo, but is to conduct the necessary discovery in state court to pin down those facts and then, if appropriate, use that information as a springboard for removal. Thus, even if plaintiff did engage in deliberately manipulative pleading tactics, as defendant posits, Endo had recourse in state court to counteract same.

In both its Notice of Removal and its brief on the Motion to Remand, Endo also advances the argument that Stebbins was fraudulently joined because "[i]n Alabama, a plaintiff may not recover in a legal or equitable proceeding when the basis for such an action rests on his or her own illegal conduct." (Doc. 1 ¶ 15; *see also* doc. 12, at 5 n.2.)[10] If Powell misused Opana, the theory goes, his unlawful conduct forecloses any possibility that Stebbins may be liable in this action. The trouble with this argument in the fraudulent joinder context is that it would sweep too broadly. If, as Endo asserts, plaintiff's claims against Stebbins are barred by Powell's own illegal conduct in obtaining and ingesting Opana tablets, then plaintiff's claims against Endo would fail for precisely the same reason. "Numerous federal courts have declined to declare a resident defendant fraudulently joined based on a defense that would apply equally to nonresident and resident defendants alike." *Mannsfeld v. Evonik Degussa Corp.*, 2011 WL 53098, *11 (S.D. Ala. Jan. 5, 2011) (citations omitted). Pursuant to this so-called "common defense" doctrine, "[a] showing that the plaintiff's case is barred as to all defendants is not sufficient [to establish fraudulent joinder]. When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d

---

[10] Endo frames this argument in the following terms: "Alabama's 'serious misconduct' tort rule announced in *Oden* will almost certainly bar any claims against Stebbins based on Plaintiff's admitted illegal (felony) misuse of the Opana tablets that are the subject of this action." (Doc. 1, ¶ 21.)

568, 575 (5th Cir. 2004) (*en banc*).[11]  Because Endo's argument that plaintiff cannot possibly prevail against the non-diverse defendant rests on a defense (*i.e.*, the decedent's own purportedly illegal conduct) that would be equally damaging to plaintiff's claims against the diverse defendant, the common defense doctrine precludes a finding of fraudulent joinder.[12]

In briefing the Motion to Remand, Endo formulates another fraudulent joinder argument as to the claims against Stebbins.  Specifically, Endo points out that plaintiff's negligence claim against Stebbins requires plaintiff to prove duty, breach of duty and damages.  (Doc. 12, at 4.)  Under Alabama law, Endo continues, "a nurse may not prescribe Section II narcotic drugs like Opana." (*Id.*)  Therefore, Endo reasons, plaintiff cannot possibly prove the duty element of her negligence claim against Stebbins because "[o]bviously, a practice that is not permitted by law

---

[11] *See also Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011) ("[A] plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is no weaker than his claim against the diverse defendants. … [T]he diverse defendants really are just arguing that the suit has no merit, period.  And that is a ground not for removal but for asking the court in which the suit was filed – the state court – to dismiss the suit."); *Fee v. Chesapeake Appalachia, L.L.C.*, 2014 WL 2769119, *2 (E.D. Ky. June 18, 2014) ("the common defense rule requires that the Court remand this case … if the only basis asserted by a defendant for fraudulent joinder is a common defense – one that is equally applicable to the diverse and non-diverse defendants") (citation and internal quotation marks omitted); *McDowell Pharmacy v. West Virginia CVS Pharmacy, L.L.C.*, 2012 WL 2192167, *5 (S.D. W.Va. June 14, 2012) ("Under this rule, removal of a state claim is impermissible when the legal theory upon which the defendant's claim of fraudulent joinder is predicated is a common defense that equally disposes of all defendants to the suit."); *Loop v. Allianz Life Ins. Co. of North America*, 2009 WL 981988, *5 (S.D. Ala. Apr. 13, 2009) ("when a fraudulent joinder defense would eliminate not only the claims against a single defendant, but eliminates all claims against all defendants, then the common defense rule requires that the federal court … remand the removed action back to the State courts").

[12] The Fifth Circuit has explained this rule as follows:  "[W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit.  In such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper." *Smallwood*, 385 F.3d at 574; *see also Cherry v. AIG Sun America Life Assur. Co.*, 2008 WL 508428, *2 (M.D. Ala. Feb. 21, 2008) ("these attacks on the joinder of the non-diverse defendant are in reality attacks on the merits of the entire case because they undermine the claims against both the diverse and non-diverse defendants").

cannot create a legal duty." (*Id.* (emphasis omitted).)  Defendant cites no authority for what it terms an "obvious[]" proposition.

Insofar as Endo's position is that an Alabama negligence claim is unsustainable against a defendant who has acted in violation of law, that premise is demonstrably invalid.  Alabama courts have held that "[v]iolation of statutes or ordinances may be negligence. … If the statute or ordinance violated was enacted or promulgated for the protection of the person claiming to have been injured by reason of the violation, the violation of the statute may be negligence *per se* or negligence as a matter of law." *Keeton v. Fayette County*, 558 So.2d 884, 887 (Ala. 1989) (citations omitted); *see also Stephens v. Harris*, 51 So.3d 1071, 1073 (Ala.Civ.App. 2010) (same).  It is hardly a stretch to think that Alabama laws forbidding non-physicians from dispensing narcotic drugs were promulgated, at least in part, to protect patients and end users.  In that event, it is at least possible that, if Stebbins violated Alabama law as Endo suggests, such violation could actually form the basis of a viable negligence *per se* claim against him.  More generally, the point is that a person can owe a duty of care even when that person is engaged in a practice not permitted by law.  Endo's flat statement to the contrary does not appear grounded in law, and does not bolster its fraudulent joinder theory of federal jurisdiction.[13]

As an alternative to a traditional fraudulent joinder analysis, Endo cites the doctrine of fraudulent misjoinder.  In certain circumstances, fraudulent misjoinder of a nondiverse defendant may justify excluding that defendant's citizenship from the § 1332 jurisdictional calculus.  *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.").  "[N]ot every misjoinder amounts to fraudulent joinder; rather,

---

[13] An example illustrates the point.  Suppose there is an automobile accident caused when Driver A and Driver B collide after Driver B abruptly switched lanes without activating his turn signal.  That omission by Driver B would violate an Alabama statute.  *See* Ala. Code § 32-5A-133(a) ("No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal …."). Under Endo's argument, Driver B would owe no duty to Driver A because Alabama drivers are not permitted to change lanes without activating their turn signals and "a practice that is not permitted by law cannot create a legal duty." (Doc. 12, at 4.)  But such a premise appears unfounded in applicable law or common sense.  *See, e.g., Carroll v. Deaton, Inc.*, 555 So.2d 140, 141 (Ala. 1989) ("Generally, violation of a traffic ordinance or rule of the road constitutes negligence *per se*.").

only in egregious circumstances does misjoinder constitute fraudulent joinder." *Ash*, 2009 WL 424586, at *8. While the precise contours of the "egregious circumstances" test may be ill-defined in the caselaw, it is clear that fraudulent misjoinder does not exist if the claims against both sets of defendants were brought "with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences[,] and [] any question of law or fact common to all defendants will arise in the action." *Kline v. Logan*, 2014 WL 1686525, *3 (S.D. Ala. Apr. 29, 2014); *see also Bollea v. Clem*, 937 F. Supp.2d 1344, 1350 (M.D. Fla. 2013) ("if [non-diverse defendant] has no joint, several, or alternative liability with [diverse defendant], *and* the claim against her has no real connection to the claim against [diverse defendant], then she has been fraudulently misjoined and remand is improper"). Whatever else may be said, this is not a case of ***egregious*** misjoinder of Endo and Stebbins as defendants. Brown's claims against both Endo and Stebbins arise from the same transactions or occurrences (*i.e.*, Powell's acquisition of Opana tablets that he then crushed and inhaled, and his ensuing demise), and there are obvious common questions of fact as to plaintiff's claims against both defendants (such as whether the crushed form of the Opana caused Powell's death). These circumstances simply do not support application of the fraudulent misjoinder pathway to a fraudulent joinder determination.[14]

For all of the foregoing reasons, the Court finds that the removing defendant has not met its heavy burden of showing by clear and convincing evidence that there is no possibility that Brown can establish a viable claim against the non-diverse defendant, Stebbins. The removing defendant has also failed to make an adequate showing of fraudulent misjoinder. Accordingly, the Court concludes that Stebbins was not fraudulently joined and that his citizenship therefore must be considered in the jurisdictional analysis. Because Stebbins and Brown are both alleged to be citizens of the State of Alabama, complete diversity is lacking and removal jurisdiction was not properly predicated on the diversity provisions of 28 U.S.C. § 1332.

---

[14] To be sure, Endo has argued that there is "no such nexus" between Brown's claims against Stebbins and those against Endo. (Doc. 12, at 6.) Yet even Endo concedes that "the claims share … the fact of the decedent's alleged misuse of Opana." (Doc. 12, at 7.) The fact of whether Powell did or did not misuse Opana tablets, and the legal implications of any such misuse on his negligence claims, loom large as common issues in both cases, thereby negating any fraudulent misjoinder argument that Endo might advance.

C.  *Severance.*

As an alternative ground for opposing remand, Endo argues that even if Stebbens was not fraudulently joined and diversity jurisdiction is lacking, "this court can still retain jurisdiction by severing claims against nondiverse dispensable defendants." (Doc. 1, ¶ 18.) The fundamental problem is that Endo essentially is asking this Court to employ the procedural device of severance not to "retain" jurisdiction, but to manufacture federal jurisdiction that did not exist at the moment when Endo removed this case from Clarke County Circuit Court. As shown by the foregoing discussion, when the Notice of Removal was filed, there was neither federal question jurisdiction nor diversity jurisdiction over this action. Of course, well-settled law provides that diversity jurisdiction is examined at the time of removal. *See, e.g., Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011) ("The existence of federal jurisdiction is tested as of the time of removal.").[15]

Federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent. *See, e.g., Wolf v. Kennelly*, 540 F. Supp.2d 955, 963 (N.D. Ill. 2008) ("it is most proper for the removing party to challenge the misjoinder in state court before seeking removal because removal is not possible until the misjoined party that destroys removal jurisdiction is dropped from the action") (citation and internal marks omitted).[16] "If there was not complete diversity at the time of removal, and if there was no

---

[15]   *See also Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("for purposes of this challenge to the subject matter jurisdiction of the district court, the critical time is the date of removal.... If jurisdiction was proper on that date, subsequent events ... will not operate to divest the court of jurisdiction."); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) ("Jurisdictional facts are assessed on the basis of plaintiff's complaint as of the time of removal.").

[16]   *See also Baker v. Tri-Nations Express, Inc.*, 531 F. Supp.2d 1307, 1316-17 (M.D. Ala. 2008) (rejecting motions to dismiss or sever nondiverse parties, and reasoning that "[w]ithout complete diversity, this federal court of limited jurisdiction has no authority to do anything other than remand"); *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp.2d 1123, 1127 (E.D. Cal. 2004) ("the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court"); *Ferry v. Bekum America Corp.*, 185 F. Supp.2d 1285, 1290 (M.D. Fla. 2002) ("Using Rule 21 in the manner Defendants propose would allow a district court to 'create' jurisdiction on removal simply by dismissing nondiverse, dispensable plaintiffs against their wishes. … Absent a showing of fraudulent or egregious joinder, this Court is obligated to remand."); *In re Norplant Contraceptive Products Liability Litigation*, 976 F. Supp.
(Continued)

fraudulent joinder or fraudulent misjoinder of nondiverse parties, then the lack of complete diversity at the moment of removal deprives this Court of subject matter jurisdiction and necessitates remand to state court." *Interior Cleaning Systems, LLC v. Crum*, 2014 WL 3428932, *5 n.10 (S.D. Ala. July 14, 2014); *see also Stillwell*, 663 F.3d at 1332 ("When a case is removed based on diversity jurisdiction, as this case as, the case must be remanded to state court if there is not complete diversity between the parties …."). "The Court cannot (and, even if it had discretion to do so, would not) retroactively manufacture federal subject matter jurisdiction in this case by slicing off the non-diverse portions of the case, returning those to state court, and keeping the rest." *Interior Cleaning*, 2014 WL 3428932, at *5 n.10.[17] Accordingly, Endo's request that this Court sever Brown's claims against Endo from her claims against Stebbins, maintaining the former in federal court while dispatching the latter back to state court, is **denied**.

### III. Conclusion.

When confronted with a pleading that may or may not provide a basis for federal removal jurisdiction, a defendant must not preemptively remove the case and ask the federal court to resolve those jurisdictional uncertainties in favor of removal because the plaintiff could have drafted her complaint with greater precision and clarity. Rather, the defendant should avail itself

---

559, 561 (E.D. Tex. 1997) (declining to exercise jurisdiction "unless and until the diverse parties are formally severed prior to removal from the nondiverse parties pending in the state court case"); *Spann v. Northwestern Mut. Life Ins. Co.*, 795 F. Supp. 386, 391 (M.D. Ala. 1992) (severance of claims to create federal jurisdiction "would be appropriate only if the court has jurisdiction" to begin with); *Perry v. Norwest Financial Alabama, Inc.*, 1998 WL 964987, *3 (S.D. Ala. Dec. 9, 1998) ("Until and unless a situation arises in which there exists complete diversity of citizenship, this court may not sever claims, it may not dismiss parties, it may do nothing but remand this action to the Circuit Court of Marengo County, Alabama"); *In re Darvocet, Darvon and Propoxyphene Products Liability Litigation*, 2013 WL 3872230, *12 (E.D. Ky. July 25, 2013) (disapproving use of federal rule to sever properly joined claims in a removed case where "[s]uch a reshaping of the action by the district court creates jurisdiction where it did not previously exist") (citation omitted).

[17] *See also Heard v. American Alternative Ins. Corp.*, 2013 WL 593687, *4 (S.D. Ala. Feb. 15, 2013) (removing defendant "cites no authority supporting the remarkable proposition that it may remove a case as to which there is no original jurisdiction, have the Court carve out and remand the portions interfering with original jurisdiction (as does [the resident defendant]'s citizenship), and thereby remain in federal court. This most definitely is not the law.").

of available procedural tools in state court to ferret out and lock in the plaintiff's claims. If discovery materials and refined pleadings establish a substantial federal question or negate the possibility that the plaintiff could prevail in her claims against the non-diverse defendant because of a defect specific to the claims against that defendant, then and only then should the diverse defendant remove the case. Likewise, a defendant convinced that a plaintiff has misjoined a non-diverse defendant should seek severance in state court, not federal court (at least in the absence of an egregious misjoinder, such as where there is literally no connection between the plaintiff's claims against the two defendants). In other words, a defendant in Endo's position should ask questions first and shoot later, rather than the other way around.

Here, Endo elected to remove this case to federal court at a very early stage of the process, even though it is unable to shoulder its heavy burden of establishing either the existence of a substantial federal question or the certainty that Brown's claims against the non-diverse defendant cannot succeed because of a defect specific to the claims against that defendant. Because the record does not support a determination that either federal question jurisdiction or diversity jurisdiction is present here, Plaintiff's Motion for Remand (doc. 8) is **granted**. This action is **remanded** to the Circuit Court of Clarke County, Alabama for further proceedings.

DONE and ORDERED this 5th day of August, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE